ORIGINAL

ENTERED
CLERK. U.S. DISTRICT COURT

JAN 1 3 2006

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

JAN 1 2 2006

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

HOLLYNN D'LIL,                          )   CASE NO. CV 02-9506 DSF (VBKx)
                                        )
            Plaintiff,                  )
                                        )   ORDER AFTER EVIDENTIARY
        v.                              )   HEARING RE STANDING
                                        )
BEST WESTERN ENCINA LODGE               )
& SUITES, et al.,                       )
                                        )
            Defendants.                 )
_____ )

## I.  PROCEDURAL BACKGROUND

Plaintiff is a physically disabled person who requires the use of a wheelchair for mobility.  In her Complaint for Injunctive Relief and Damages filed December 13, 2002, Plaintiff seeks injunctive relief pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, et seq. ("ADA") against the Best Western Encina Lodge & Suites ("Encina Lodge") and related persons and entities.

Defendants challenged Plaintiff's standing under Article III of the United States Constitution in both their motion to dismiss filed February 28, 2003[1] and

---

[1]  This motion was stricken by the Honorable Audrey B. Collins for failure to comply with Local Rule 7-3.

1   motion for partial summary judgment filed October 25, 2004.[2]

2       The matter was set for trial, but the parties instead presented a proposed

3   consent decree, which the Court signed ("Consent Decree").  The Consent Decree

4   reserved the issue of attorney's fees, which was to be determined by way of a

5   motion.

6       Because Plaintiff must establish standing before the Court can hear such a

7   motion, the Court issued its Order re Standing requiring that the parties confer and

8   set a date for an evidentiary hearing on the issue.

9       Defendants' Trial Brief Re: Hearing On Standing was filed September 16,

10  2005.  Plaintiff's Evidentiary Hearing Brief ("Pl. Evid. Hrg. Br.") was filed

11  September 20, 2005.  The evidentiary hearing was held September 22, 2005.

12  Plaintiff's Opening Brief re Standing (Following Evidentiary Hearing) ("Pl. Op.

13  Br.") was filed November 7, 2005.  Defendants' Post-Hearing Responding Brief

14  On Standing was filed November 28, 2005.  Plaintiff's Reply Brief re Standing

15  (Following Evidentiary Hearing); Objections to Non-Foundation of Argument

16  ("Reply") was filed December 12, 2005.  The Declaration of Timothy S. Thimesch

17  Supporting Plaintiff's Reply Brief re Standing (Following Evidentiary Hearing);

18  Objections to Non-Foundation of Argument was filed December 13, 2005.

19  Defendants' Objections to Declaration of Timothy S. Thimesch Supporting

20  Plaintiff's Reply Brief re Standing (Following Evidentiary Hearing) was filed

21  December 13, 2005.

22

23

24

25

26

27

28

---

[2] The Court found that the summary judgment standard precluded granting Defendants' motion.

## II. THIS COURT HAS A DUTY TO RAISE SUA SPONTE THE ISSUE OF PLAINTIFF'S STANDING

Plaintiff repeatedly and vigorously protested this Court's order that she establish her standing in this case -- both in her pre- and post-hearing briefs and at the evidentiary hearing.  Pl. Evid. Hrg. Br. 1-4; Pl. Op. Br. 1-2; Reply 4:23-8:10.; Reporter's Transcript of Evidentiary Hearing ("Tr.") 5-22.  Plaintiff's unsupported and untenable claim that the Court could no longer inquire into its own jurisdiction was especially troublesome in light of the fact that the Court itself cited, in its April 26, 2005 Order re Standing, a United States Supreme Court case that directly contradicted Plaintiff's position.  Equally troublesome was Plaintiff's unsupported and unfounded assertion that Defendants had waived or stipulated to the Court's jurisdiction.  Plaintiff cited no law to support these claims, nor could she.[3]  See e.g., United States v. Hays, 515 U.S. 737, 742 (1995) (subject matter jurisdiction cannot be waived); Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003) (parties cannot stipulate to jurisdiction where none exists).[4]  As the Supreme Court stated:

> The question of standing is not subject to waiver . . . . We are required to address the issue even if the courts below have not passed on it, and even if the parties fail to raise the issue before us.  The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines.

Id. (alteration in original) (internal quotation and citation omitted).  See also Bernard v. County of Los Angeles, 279 F.3d 862, 868 (9th Cir. 2001) (court has

---

[3]  Plaintiff's citations were irrelevant to the issues at hand.

[4]  This is not the only time in this litigation that Plaintiff has made clearly untenable arguments.

"both the power and the duty to raise the adequacy of [plaintiff's] standing sua sponte.") Indeed, even if this Court had ignored the issue and awarded attorney's fees, on appeal of that award the Ninth Circuit panel would have been compelled to examine the issue. E.g., Smith v. Brady, 972 F.2d 1095 (9th Cir. 1992); Latch v. United States, 842 F.2d 1031 (9th Cir. 1988).

At the hearing, Plaintiff also criticized defense counsel for raising the issue of standing, and impugned counsel's motives for doing so. This is astonishing in light of the fact that Plaintiff must have known that the issue was raised by the Court without Defendants' instigation. See Order dated April 26, 2005. Such totally unfounded allegations are unacceptable.[5]

## III. LEGAL STANDARD

A.    Article III Standing

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases" and "controversies." The "core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). See also City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) ("those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy").

[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" --

---

[5] Although the Court would certainly consider further briefing on the subject, it appears a finding of lack of standing would not preclude the Court from enforcing the Consent Decree. "Even in those instances in which the court's original jurisdiction may have been questionable, it has jurisdiction over settlement agreements, the execution of which renders the prior controversy academic." Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1371 (6th Cir. 1976) (citation omitted). Defendants may still oppose an award of attorney's fees. Defendants "did not consent to pay attorney's fees, but only stipulated that the settlement would not bar the *motion* for fees." Smith v. Brady, 972 F.2d at 1097.

4

1    an invasion of a legally protected interest, which is (a) concrete and

2    particularized, and (b) "actual or imminent, not 'conjectural or

3    hypothetical.'"  Second, there must be a causal connection between

4    the injury and the conduct complained of -- the injury has to be "fairly

5    . . . trace[able] to the challenged action of the defendant, and not . . .

6    the result [of] the independent action of some third party not before

7    the court."  Third, it must be "likely," as opposed to merely

8    "speculative," that the injury will be "redressed by a favorable

9    decision."

10   Lujan, 504 U.S. at 560-61 (internal citations omitted; alterations in original).  All

11   three elements must exist in order for plaintiff to have standing.  Vermont Agency

12   of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000).

13   "The party invoking federal jurisdiction bears the burden of establishing

14   these elements."  Lujan 504 U.S. at 561 (citation omitted).  Because these

15   elements "are not mere pleading requirements but rather an indispensable part of

16   the plaintiff's case, each element must be supported in the same way as any other

17   matter on which the plaintiff bears the burden of proof, i.e. with the manner and

18   degree of evidence required at the successive stages of litigation."  Id.

19   Standing must exist at the time the action is filed, id. at 569-70 n.4 -- in this

20   case, as of December 13, 2002.  Plaintiff cannot establish standing by showing

21   later actions or post-filing intent.  See id.; see also Brother v. Tiger Partner, LLC,

22   331 F. Supp. 2d 1368, 1373 (M.D. Fla. 2004).  In addition, a mere profession of an

23   intent to return to a previously visited place is not enough.  "Such 'some day'

24   intentions -- without any description of concrete plans, or indeed even any

25   specification of when the some day will be -- do not support a finding of the

26   'actual or imminen' injury . . . ."  Lujan, 504 U.S. at 564.

27   "[I]f the district court lack[s] jurisdiction over the underlying suit, 'it ha[s]

28   no authority to award attorney's fees.'"  Smith v. Brady, 972 F.2d at 1097 (IRS'

1   settlement with taxpayers did not constitute consent to jurisdiction over fee

2   motion).  See also Latch v. United States, 842 F.2d 1031 (reversing award of fees

3   because district court lacked jurisdiction to hear underlying tax claim).

4     But to state the essential requirements of Article III standing is to begin the

5   analysis -- not to end it.  No case has yet precisely defined "imminent," nor

6   determined the degree of "likelihood" of return necessary to establish standing.

7   Even the individual factors relevant to analyzing these issues necessarily differ

8   depending on the nature of the injury.  Compare, for example, Lujan, 504 U.S. 555

9   (suit to enjoin regulation concerning Endangered Species Act) with City of Los

10  Angeles v. Lyons, 461 U.S. 95 (suit to enjoin LAPD's "chokehold" practice) and

11  Schroedel v. New York Univ. Med. Ctr., 885 F. Supp. 594, 599 (S.D.N.Y. 1995)

12  (suit to require hospital to provide sign language interpreters).

13    Therefore, the Court next surveys the case law addressing this issue in the

14  context of the ADA.  Unfortunately, neither the Supreme Court, the Ninth Circuit,

15  nor most of the other circuit courts have yet provided guidance on this issue.

16    B. Standing to Seek Injunctive Relief Pursuant to the ADA

17    "[U]nder the ADA, once a plaintiff has actually become aware of

18  discriminatory conditions existing at a public accommodation, and is thereby

19  deterred from visiting or patronizing that accommodation, the plaintiff has

20  suffered an injury."  Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1136

21  (9th Cir. 2002) (dismissal reversed where plaintiff alleged he visited other stores

22  in this chain regularly, had visited this store in the past, had knowledge of barriers

23  to access, and preferred to shop at this store if it were accessible).  Thus, a plaintiff

24  need not show she has repeatedly patronized the facility -- or even patronized it at

25  all -- to prove injury under the ADA.  But Article III's standing requirements

26  unquestionably apply in ADA cases, and plaintiff must also show the additional

27

28

6

1    essential elements set forth in Lujan.[6]  Id.  Thus, once a plaintiff with a disability

2    has concluded the facility is not accessible, she need not struggle with the

3    inaccessibility to establish injury.  But she must nevertheless establish that -- but

4    for the inaccessibility -- she is likely to return.  See Lujan, 504 U.S. at 560-61.  At

5    the pleading stage, the court is obligated to accept all material allegations as true.

6    At trial, plaintiff must prove that she has standing.  See Lujan, 504 U.S. 561.

7        As with general Article III standing, no standard has been established for

8    the necessary degree of "likelihood" that an ADA plaintiff will return, nor a

9    specific number of times per year that plaintiff will visit the facility, nor even how

10   far forward in time should be considered in determining whether the injury might

11   be "imminent."  See Lujan, 504 U.S. at 564 n.2.  Nor do the cases decided thus far

12   provide much assistance -- especially where the facility is a hotel.

13       Several courts have considered: "(1) the proximity of the place of public

14   accommodation to plaintiff's residence, (2) plaintiff's past patronage of

15   defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4)

16   the plaintiff's frequency of travel near defendant."  Molski v. Arby's Huntington

17   Beach, 359 F. Supp. 2d 938, 947 (C.D. Cal. 2005) (plaintiff sufficiently

18   established standing given the early stage of the case).  Even these cases provide

19

20   [6] Plaintiff proposes that "[i]f this case is to be a vehicle toward reform," the Court
21   adopt four "new rules" for federal jurisdiction because "APPLICATION OF THE
     INJURY-IN-FACT TEST HAS BECOME SERIOUSLY DYSFUNCTIONAL, AND IS
22   NOW CONTRARY TO THE PUBLIC INTEREST; IT IS TIME FOR SERIOUS
23   REFORM!" Pl. Evid. Br. 9.  Plaintiff's suggested "new rules" are: (1) "You may not
     challenge standing unless the Department of Justice intervenes." (2) "In federal Court,
24   Article III standing need not be proved for violations of California law." (3) "The
25   determination of standing shall remain strictly objective." and (4) "Compliance by
     others is no excuse." Id. at 10.  This ludicrous suggestion demonstrates, inter alia,
26   Plaintiff's lack of knowledge concerning the purpose of Article III and the separation of
27   powers doctrine -- as well as the function and power of the district courts.  It also
     strongly suggests Plaintiff's recognition that she has failed to meet the requirements for
28   Article III standing.

1  little guidance as to how these factors are to be evaluated, and courts are not

2  consistent in evaluating the importance of the various factors.

3  **Proximity**

4  They disagree, for example, on the relevance of proximity in evaluating

5  likelihood of return where the property at issue is a hotel. In <u>Brother v. Tiger</u>

6  <u>Partner, LLC</u>, 331 F. Supp. 2d 1368, 1373 (M.D. Fla. 2004), the court, on

7  summary judgment, found no standing when the plaintiff lived "more than two

8  hundred and eighty miles (280) away from the subject property, and admit[ted]

9  that he travel[ed] to the . . . area . . . only about twice a year." But the court in

10 <u>Access 4 All, Inc. v. Wintergreen Comm. Prop. Ltd.</u>, 2005 U.S. Dist. LEXIS

11 26935 at * 10-11 (N.D. Tex. November 7, 2005) concluded that in cases involving

12 a hotel, the proximity factor is not applicable.

13 **Past Patronage**

14 "[T]he lack of a 'history of past patronage seems to negate the possibility of

15 future injury at [that] particular location.'" <u>Molski v. Mandarin Touch Restaurant</u>,

16 385 F. Supp. 2d 1042, 1045 (C.D. Cal. 2005) (citation omitted) (granting summary

17 judgment and dismissing ADA claim for lack of standing). <u>See also</u> <u>Brother v.</u>

18 <u>CPL Investments, Inc.</u>, 317 F. Supp. 2d 1358, 1369 (S.D. Fla. 2004) (court found

19 no standing in light of plaintiff's "extensive litigation, the fact that he never stayed

20 at the hotel, and his testimony about why he did not keep a subsequent

21 reservation"). This Court agrees that the lack of past patronage, while not

22 completely negating standing, certainly lessens the likelihood that a plaintiff will

23 return. This may not be true, however, where the plaintiff is aware of the

24 inaccessibility, has attempted once to use the facility, and simply cannot

25 comfortably avail herself of its services. (Obviously, some "barriers" absolutely

26 preclude a plaintiff from using a facility, while others simply make it less

27 convenient.) The persuasive force of this argument is even further reduced where

28 defendant's business is part of a chain and plaintiff has frequented accessible

1  facilities in the chain.  See Pickern v. Holiday Quality Foods Inc., 293 F.3d at

2  1136 (plaintiff frequented Holiday stores near his residence and would visit

3  Holiday store near his grandmother's home if it were accessible); Molski v.

4  Mandarin Touch, 385 F. Supp. 2d at 1045 ("plaintiff had standing to pursue his

5  ADA claim because the restaurant in question was part of a chain, which the

6  plaintiff frequented") (citing Parr v. L&L Drive-In Rest., 96 F. Supp. 2d 1065,

7  1080 (E.D. Va. 1995)).  But see Brother v. Tiger Partner, LLC., 331 F. Supp. 2d

8  1368, 1374 (M.D. Fla. 2004) ("That he has visited the Best Western Deltona Inn in

9  the past proves nothing.  And, in view of his extensive litigation history, Mr.

10  Brother's professed intent to return to the property is insufficient.").

11  **Plans to Return**

12      "[W]here a plaintiff lacks 'concrete plans to return,' the Court must satisfy

13  itself that the plaintiff's professed intent to return is sincere and supported by the

14  factual circumstances of the case."  Many courts have concluded that a "serial

15  plaintiff's extensive litigation history can undermine his professed intent to

16  return."  Molski v. Mandarin Touch, 385 F. Supp. 2d at 1046; see also Molski v.

17  Arby's Huntington Beach, 359 F. Supp. 2d at 948 ("the filing of hundreds of

18  lawsuits may impact Mr. Molski's credibility and the believability of his assertions

19  that he intends to and will return to Arby's").  In Molski v. Mandarin Touch, 385

20  F. Supp. 2d at 1046, the court found that plaintiff's track record demonstrated that

21  he rarely returned to the businesses he sues.  Moreover, the court questioned his

22  expressed intent to return to 400 or more businesses spread across the state of

23  California; especially in light of prior case law finding it "simply implausible" that

24  a plaintiff would return to 54 public accommodations.  Id. (citing Brother v. Tiger

25  Partner, 331 F. Supp. 2d at 1368.

26  **Frequency of Travel to Geographic Area**

27      The "definitiveness of plaintiff's plans to return" to the defendant facility is

28  closely related to her "frequency of travel near defendant."  In Access 4 All, Inc.,

9

1   2005 U.S. Dist. LEXIS 26935 at * 12-13, the court found that plaintiff lacked

2   standing because he asserted only that he "frequently travel[s]" and had "not

3   presented any evidence that he travels often to the De Soto area." In <u>Assoc. For</u>

4   <u>Disabled Americans, Inc. v. Claypool Holdings. LLC</u>, 2001 WL 1112109 * 20

5   (S.D. Ind. August 6, 2001) the court found that plaintiff had standing to sue

6   because he "would stay at the Hotel but for the alleged barriers" and "comes to

7   Indianapolis every one or two years for family reunions and for alternating

8   Thanksgiving and Christmas holidays . . . ." <u>See</u> <u>also</u> <u>Access 123, Inc. v.</u>

9   <u>Markey's Lobster Pool, Inc.</u>, 2001 WL 920051 at *3 (D.N.H. August 14, 2001)

10  (summary judgment for lack of standing denied because plaintiff's sister lived

11  within 15 miles of the restaurant, they go out to eat when he visits, and he would

12  return if the building were accessible to him).

13          In some cases, the strength of a plaintiff's ties to the area where defendant's

14  business is located, coupled with a declaration of desire to patronize defendant's

15  business, may establish standing.  <u>See</u> <u>Pickern v. Holiday Quality Foods Inc.</u>, 293

16  F.3d at 1136 (plaintiff frequented Holiday stores near his residence and would

17  visit the nearby Holiday store during his weekly visits to his grandmother's home

18  if it were accessible).

19                  **IV.  PLAINTIFF HAS NOT ESTABLISHED STANDING**

20          A.      <u>Plaintiff Has Not Even Addressed The Relevant Issue</u>

21          Standing must exist at the time the action is filed.  <u>Lujan</u>, 504 U.S. at 569-

22  70.  But Plaintiff provided no evidence that her injury was "actual or imminent,"

23  as opposed to "conjectural or speculative," <u>as of December 2002</u>.  Plaintiff cannot

24  establish standing by showing <u>later</u> actions, or an intent to return to the facility or

25  geographic area formed <u>after</u> the filing of her suit.  <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Brother v.</u>

26  <u>Tiger Partner, LLC</u>, 331 F. Supp. 2d at 1373.  It is obvious that Plaintiff could

27  easily have testified to her intention -- as of December 13, 2002 -- to return to

28  Santa Barbara, her plans for returning to Santa Barbara, and her intention to stay at

1  the Encina Lodge if it were made accessible.[7]  Her testimony, _if_ credited, and _if_
2  factually sufficient to meet the <u>Lujan</u> requirements, were all that was necessary to
3  meet her burden.  Yet Plaintiff was asked no questions that would elicit such
4  testimony.  Instead, Plaintiff was asked about her present intentions -- in other
5  words, she was asked about her intentions approximately two years and nine
6  months <u>after</u> the relevant time frame.[8]  Even then, Plaintiff said only that (1) she
7  had "a case coming up for Mr. Singleton," Tr. 54:18, (2) she had a trial in Santa
8  Barbara (apparently the suit she filed against Ramada), Tr. 54:23-24, and (3) she
9  had "been talking about taking a vacation down to Santa Barbara . . . ."  Tr. 54:19-
10 22.  Plaintiff later testified that the case for Mr. Singleton was in Carpenteria, not
11 Santa Barbara, Tr. 73:11-25, and that she has no other work in Santa Barbara.  Tr.
12 88:21-23.  Because questions relating back to 2002 were so obviously relevant and
13 could so easily have been addressed, the Court can only assume the answers would
14 not have established standing.

15         Further, Plaintiff herself proposes findings of fact and conclusions of law
16 she seeks to establish.  Pl. Evid. Hrg. Br. 4:16-8:20.  None of these addresses the
17 relevant issues.  Instead Plaintiff again argues at length that her litigation history
18 should not be considered.  <u>Id.</u>  Even in her Opening Brief re Standing (Following
19 Evidentiary Hearing), Plaintiff fails to address the facts existing on the date the
20 suit was commenced.  Instead, Plaintiff argues that she has satisfied the
21 requirements of actual and imminent injury simply because "she frequents the
22 Santa Barbara area, and that barriers persist at the Encina Lodge that 'deter' her
23 return and use . . . ."  Pl. Op. Br. 4:18-21.  However, a profession of an intent to
24 return to a previously visited place is not enough.  The relevant evidence would

25

26 [7]  Indeed, Defendants addressed the numerous defects in Plaintiff's testimony before
27 beginning their cross-examination.  None of the defects was corrected on re-direct.

28 [8]  "Do you have any future plans to visit Santa Barbara?"  Tr. 54:14-15.

1   have been that, as of approximately December 2002, Plaintiff had specific plans to

2   return to Santa Barbara within a reasonable period of time for some specific

3   purpose.  See Lujan, 504 U.S. at 564 ("'some day' intentions -- without any

4   description of concrete plans, or indeed even any specification of when the some

5   day will be -- do not support a finding of the 'actual or imminent' injury . . . .").

6          No such evidence was provided.  Plaintiff has failed to satisfy her burden

7   that she has Article III standing.

8   B.     Plaintiff's Standing Would Be Questionable Even If The Court Were

9          to Speculate Concerning Plaintiff's Plans and Intent in 2002

10         It is generally not a Court's function to speculate about what case a plaintiff

11  might have been able to present if she had focused on the relevant issues.

12  Nevertheless, the amount of time and effort already expended by the parties

13  dictates that the Court consider whether the record suggests evidence that might

14  have been able to establish standing if the issue had been properly addressed.[9]

15                                **Proximity**

16         Ordinarily the proximity analysis would remain the same throughout the

17  litigation, but here Plaintiff has changed her residence since filing suit.  Tr. 54:7-8.

18  Plaintiff has provided no information concerning the difference in distances

19  between her old and new residences.  She simply claims distance favors her

20  position.  Pl. Op. Br. at 4:27-5:1.  Because the Court does not know how this

21  change in location would impact the likelihood or frequency of Plaintiff's travel

22  (especially for non-business purposes), it is nearly impossible to determine what

23  Plaintiff's plans and intent might have been in 2002 based on her testimony about

24  present plans.

25         Defendant argues that the risk of imminent danger is minimal because

26

27  [9] Defendants quite properly object to Plaintiff's tactic of providing additional evidence
    after the evidentiary hearing, because it is not subject to cross-examination.  Even if the
28  Court were to consider this evidence, its decision would not change.

1 Plaintiff lives approximately 400 miles from the Encina Lodge.  But the Court

2 agrees that distance is significantly less relevant where hotels are at issue.

3 Generally one does not stay in a hotel that is close to one's residence.  Considering

4 that Plaintiff's business involves travel and that Plaintiff traveled to Santa Barbara

5 before the suit was filed, the Court concludes this issue is of minimal relevance

6 here.

7 **Past Patronage**

8 Plaintiff admits she never stayed at the Encina Lodge before the stay at

9 issue.  She provides no evidence of any previous desire or intention to stay there.

10 Although the Best Western is a chain, Plaintiff does not allege that she has

11 frequented other Best Western hotels or that she has a preference for Best Western

12 hotels, though she obviously knows such a preference would be relevant.  Rather,

13 Plaintiff alleges that she has "a certain trust in the quality of the Ramada brand."

14 Declaration of Plaintiff Hollynn D'Lil Submitted in Opposition to Defendants'

15 Motion for Summary Judgment ("D'Lil Decl.") at ¶ 13c.[10]  In a separate litigation,

16 she has claimed to have confidence in the Radisson brand. Ex. 101.  She makes no

17 similar allegation regarding Best Western.[11]  This factor does not assist Plaintiff in

18 establishing standing.

19 **Plans to Return**

20 Plaintiff alleges: "If made accessible, I would definitely choose [Encina

21 Lodge] again during my visits to Santa Barbara.  D'Lil Decl. 9:4-5.  When asked

22 why Plaintiff would like to stay at the Best Western, she replied: "It's simple, and

23

24 [10] Defendants submitted the Declaration as Exhibit 102.

25 [11] Plaintiff does state that "most" of the statements she makes in her declaration about
the Ramada are "equally or more true" (whatever that means) "with regard to the Best
26 Western Encina." D'Lil Decl. at ¶ 14.  The Court cannot fathom why Plaintiff
presented her testimony on summary judgment in such a bizarre manner, but will not
27 jump to the unsupported conclusion that Plaintiff meant to say that she trusts the Best
Western brand.
28

1   you park close to your room, and it has a place to eat so I don't have to get in the

2   car and drive somewhere else to go eat. It's just easy. I like -- I like the little

3   simple like strip mall -- I mean, little strip hotels more than the great big fancy

4   ones. They are easier to deal with. . . . It meets the configuration of the kind of

5   hotel I like to stay at. It's also less expensive than some of the other hotels."

6   58:21-59:2; 62:7-9. Although Plaintiff has testified concerning her preferences in

7   other litigation, these factors apparently have not been raised. Nor does Plaintiff

8   state whether other Santa Barbara hotels, including other accessible hotels, have

9   these features.

10       In any event, her assertion is somewhat curious in light of other testimony

11   in this case. Clearly, the Encina Lodge was not one of Plaintiff's first choices.

12   She called 11 other apparently accessible hotels (listed on a website of accessible

13   hotels in Santa Barbara) before making a reservation at the Encina Lodge. D'Lil

14   Decl. at ¶ 6c. She purported to be looking for an accessible hotel, rather than an

15   inaccessible one that she could sue. Nevertheless, she continued to call other

16   hotels before phoning the Encina Lodge, even though she had <u>twice</u> been advised

17   by Hugh Marsh that the Encina Lodge may have accessible rooms. Tr. 42:19-21;

18   82:12-15. Plaintiff's testimony concerning the list of accessible hotels and her

19   difficulties in finding an accessible room were -- simply put -- evasive.[12]

20       Additionally, when asked why Plaintiff cannot stay at any of the other four

21   Santa Barbara hotels that she mentioned in her testimony, she replied: "[I]f I go to

22   Santa Barbara by myself, I can't stay at the Marina Beach. I don't like to stay at

23   the Fess Parker. That leaves me two. And if they are booked, the problem is that

24   leaves me -- if they each have one or two rooms that are accessible, that leaves me

25

26   [12] The Court does not hold that a plaintiff cannot have standing simply because she

27   visited a hotel for the express purpose of filing suit, nor does the Court consider
     whether this was Plaintiff's purpose here. The relevant issue is the likelihood that

28   Plaintiff will return.

14

1   an opportunity of getting -- getting reservations of four rooms as opposed to

2   hundreds like everybody else if it doesn't work out." Tr. 63:21-25; 64:1-2.[13]

3   Thus, Plaintiff speculates that the two hotels she liked may not be available on the

4   dates when she chooses to travel to Santa Barbara.

5       Defendant argues that Plaintiff's claim that the Fess Parker Doubletree was

6   too expensive is not credible because Attorney Jason Singleton was paying her

7   fees.  Although this is significant to Plaintiff's travel plans while on business,

8   Plaintiff also alleges that she visits Santa Barbara for vacation and to see the

9   Marshes.  Presumably, during these visits her hotel fees are not paid by Mr.

10  Singleton.  This argument does lose some weight, however, because Plaintiff

11  claims that inaccessible hotels unfairly compete with accessible hotels; they are

12  able to offer lower room rates because they do not offer similar accommodations.

13  Pl. Evid. Hrg. Br 8:16-20.  Thus, once the Encina Lodge has completed all of the

14  changes required by the consent decree, it presumably will charge a rate more

15  comparable to the Fess Parker.

16      Moreover, Plaintiff also testified that she would definitely stay at the

17  Ramada on her trips to Santa Barbara because that particular hotel is very

18  conveniently located between Solvang and her friend Hugh Marsh's residence in

19  Montecito. Tr. 50:18-24.  Plaintiff never states how far the Marsh residence is

20  from her home -- or from Santa Barbara, or why she wouldn't stay someplace else

21  an equal distance from the Marshes, but in a different direction if she weren't

22  visiting Solvang.  There is no evidence of how often she might have intended to

23  visit Solvang as of 2002, or for what purpose, except that it appears to be

24

25  [13] The Court agrees that the existence of one or more hotels that already have accessible
    rooms does not prevent Plaintiff from establishing standing to sue additional hotels.

26  She must however, make some showing that she is likely to stay at that particular hotel,
    not merely that she will return to Santa Barbara. See Pickern v. Holiday Quality Foods

27  Inc., 293 F.3d at 1136;  Pickern v. Best Western Timber Cove Lodge Marina Resort,

28  2002 U.S. Dist. LEXIS 1709 at *14.

1    business-related.

2        Additionally, she found a "little hotel" during this visit that was "pretty

3    good." Tr. 47:19-20.

4        There is also a Radisson Hotel in or near Santa Barbara.  Though previously

5    professing trust of the Radisson brand and quality, Tr. 76:17-21, Plaintiff now

6    claims that she did not even think to call the Santa Barbara Radisson because she

7    dislikes large hotels.  Tr. 75:4-77:1.  Yet she also testified that she booked a

8    reservation at the Radisson Visalia (the reservation she cancelled because of the

9    last minute change to Santa Barbara) because "it looked like the newest, best,

10   biggest hotel most likely to be accessible." Tr. 99:12-20.  She booked a room at

11   that hotel again when she next traveled to Visalia.  Tr. 99:23-100:5.

12       Plaintiff testified that in 2002 she sued Howard Johnson Express Inn in

13   Redding, Holiday Inn Hilltop in Redding, The Bel Air Motel in Redding, The Red

14   Lion Inn in Redding, The Best Western Inn in Redding, and The Best Western

15   Hospitality House in Redding.  Tr. 92-94.  Plaintiff also testified that all of these

16   cases had settled, and that she had not returned to visit any of the hotels, attempted

17   to return to visit any of the hotels, or checked to see if the remediation had been

18   accomplished.  Id. at 95:5-9.  Thus, although Plaintiff would have had to have

19   some intent to stay at those hotels in the reasonably near future after the filing of

20   the suits (if the suits were filed in federal court) she had not visited any of them in

21   the two or three years since the suits were filed, nor was she aware of whether they

22   were now accessible.

23       When asked if she was involved in 62 prior lawsuits, Plaintiff replied, "I

24   think so." Id. at 64:18-19.[14]

25

26   [14] In another disingenuous attempt to ignore the Court's rulings, Plaintiff asserts that
27   the Court has found the prior litigation to be irrelevant.  As counsel surely knows, the
     Court found only that the validity of the other lawsuits (that is whether the defendants'
28   businesses were actually inaccessible) was not an issue at this hearing.  See Tr. 28:1-4.

1      In short, it appears Plaintiff declares that she intends to return to nearly

2  every place she sues (as indeed she must in order to establish standing in federal

3  court). While some of these allegations may have initially been accepted in other

4  cases without question, even at the trial stage, as more suits are filed and more --

5  and contradictory -- allegations are made, credibility concerns increase. The Court

6  would be remiss in its duty if it did not consider the credibility of such allegations

7  here. See Lujan, 504 U.S. at 561. Because the Court has found that Plaintiff has

8  presented no evidence of her plans or intent as of the commencement of the suit,

9  however, it need not discuss the other inconsistencies in her testimony.

10      Suffice it to say that the Court is not convinced of the sincerity of Plaintiff's

11  allegations of her desire to stay at Encina Lodge.

12                          **Frequency of Travel**

13      Here the relevant consideration is -- as of the commencement of the suit in

14  December 2002 -- how likely was Plaintiff to return to Santa Barbara in the

15  reasonably near future. Plaintiff has testified to her visits to the Santa Barbara

16  area since 2001, and to her intentions -- as of September 2005 -- to return. Even if

17  the Court fills in the gaps in the evidence and speculates that -- if asked the

18  relevant question -- Plaintiff would have testified in a certain manner based on

19  what later occurred and intentions later formed, Plaintiff likely still fails to

20  establish standing. Plaintiff's testimony as to frequency is a bit inconsistent. In

21  her declaration filed in opposition to Defendant's motion for summary judgment,

22  she stated: "My contacts with the Santa Barbara Area. . . . Typically, I visit the

23  Santa Barbara area at least 3-5 times per year for business and social purposes. I

24

25  Indeed, Plaintiff expended five pages of her initial brief rearguing her motion in limine
    that evidence of her past lawsuits should not be admitted. Pl. Evid. Hrg. Br. 4-8.

26  Statements made by Plaintiff in connection with those other lawsuits are certainly
    relevant to her credibility here. Indeed, the very fact that she must have alleged an

27  intention to return to these many and varied businesses is relevant to analyzing the

28  credibility of the testimony.

1  definitely plan on staying at the Ramada Hotel when it is made accessible."

2  Declaration of Plaintiff Hollynn D'Lil Submitted in Opposition to Defendants'

3  Motion for Summary Judgment at ¶ 13a.[15] Her other testimony suggests this

4  estimate is somewhat exaggerated.

5      Plaintiff stated in the evidentiary hearing that she traveled to Santa Barbara

6  three times in 2001. Tr. 45:12. Additionally, she stated that she traveled to Santa

7  Barbara,[16] on average, once or twice a year during 2002-2004. Id. at 45:12-15. In

8  her brief she again increases the frequency and states that she travels to Santa

9  Barbara 2 to 3 times per your [sic] including for her business as an access

10  consultant, and [to visit] her close friend in the area. Pl. Op. Br. 2:23-26. Yet the

11  only testimony cited to support this inconsistent unsworn allegation is Plaintiff's

12  previously cited testimony that she visits once or twice a year. Id. citing Tr. 45:8-

13  15.

14      The evidence reveals travel for three distinct purposes: vacation with

15  family, business, and visiting with her friends the Marshes. By the time the suit

16  had been filed Plaintiff had already vacationed in Santa Barbara. She did not

17  testify that she vacations there regularly, that she has vacationed there since 2001

18  or that, even as of the date of the hearing, she had any intent to vacation there

19  again. The Court cannot conclude that -- as of December 2002 -- Plaintiff planned

20  to take additional family vacations in Santa Barbara in the near future.

21      Plaintiff apparently also has traveled to Santa Barbara in her capacity as an

22  accessibility consultant when requested to do so by attorney Jason Singleton. Tr.

23  at 88: 14-23. She did not testify that she had previously been sent to Santa

24  Barbara by Singleton, or that -- as of December 2002 --  she had plans to return to

25

---

26  [15] The declaration was signed in November 2004 -- two years after the suit was filed.

27  [16] It is not clear whether "Santa Barbara" and "the Santa Barbara area" means the same

28  thing to Plaintiff.

1   Santa Barbara for Singleton.  Indeed, she had not even planned to travel to Santa

2   Barbara on December 13, 2002 until that very day.  Tr. 37:6-11.  Stretching

3   speculation nearly to its outer limits, the Court might conclude that because

4   Plaintiff sued four Santa Barbara businesses as a result of her trip, she would

5   likely be in Santa Barbara again for mediations, court hearings, trial,[17] etc.  But

6   Plaintiff has presented no evidence that these other suits had been filed, or

7   contemplated, as of December 13, 2002,[18] or that she expected that she would need

8   to be in Santa Barbara in connection with those suits.  In other words, the Court

9   cannot find evidence -- as of December 13, 2002 -- of any future plans to travel to

10  Santa Barbara for business.

11          Plaintiff's most compelling evidence is her testimony concerning her

12  friendship with the Marshes, and her visits with them.  Plaintiff has known Mr.

13  Marsh since 1978.  Tr. 51:8.  She was his colleague at the Department of

14  Rehabilitation, and continues to be a personal friend of both Mr. Marsh and his

15  wife, Frances Marsh.  Id. at 51:9-10; 54:8-22.

16          As noted above, however, Plaintiff has not stated how close her former

17  residence was to the Marshes, how close the Encina Lodge is to the Marshes, or

18  why the Encina Lodge is preferable to other hotels.  (In fact she has stated that she

19  has a preference for Ramadas, that the Ramada is convenient for visiting the

20  Marshes, and that the Ramada is quite a distance from the Encina Lodge.).  See,

21  e.g., Rosenkrantz v. Markopoulos, 254 F. Supp. 2d 1250, 1253 (M.D. Fla. 2003)

22  ("There are countless hotels closer to Plaintiff's sister-in-law's house than

23  Defendants' establishment, several of which he sued because he intends to stay

---

25  [17] Federal suits, of course, would be tried in Los Angeles, Santa Ana, or Riverside,
26  where the Central District has courthouses.

27  [18] The Court therefore need not consider whether one could create standing by suing an
    entity and then contending one would return to the area in connection with proceedings
28  in that suit.

there in the future."); <u>Brother</u>, 331 F. Supp. 2d at 1373 ("there are countless other hotels located closer to Disney World than the Best Western Deltona Inn (which is approximately fifty miles from that tourist attraction) including hotels that Mr. Brother is suing.").

Moreover, her declaration suggests that her only visits to the Marshes between 2001 and the date of the declaration occurred in connection with business trips. D'Lil Decl. ¶ 16a (assuming the friends are the Marshes), c, d. Although plaintiff stated, in ¶ 18, that she planned to visit the Marshes in April 2004, the declaration was signed in November 2004. If Plaintiff meant to say April 2005, she did not say the trip had occurred -- or why it had been cancelled -- in her September 22, 2005 testimony. As noted, she merely stated she had "been talking about taking a vacation down to Santa Barbara . . . ." Tr. 54:19-22.

Though the Court need not decide the issue here, it is obviously not clear that Plaintiff's testimony concerning her intent should be credited or that, if credited, it would establish standing.

## VI. CONCLUSION

For the reasons stated, the Court finds Plaintiff has failed to meet her burden of establishing Article III standing. The Court has no jurisdiction to consider Plaintiff's request for attorney's fees (docket #88).

Dated: _1/12/06_

_Dale S. Fischer_
DALE S. FISCHER
United States District Judge